IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ERVIN LAMONT MITCHELL,** ) | **CASE NO. 3:08CV2899** |
| ) | |
| Petitioner, ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| v. ) | |
| ) | **MAGISTRATE JUDGE GREG WHITE** |
| **ED SHELDON,** ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |

Petitioner, Ervin Lamont Mitchell ("Mitchell"), through counsel, challenges the constitutionality of his conviction in the case of *State v. Mitchell*, Lucas County Court of Common Pleas Case No. CR2006-1769. Mitchell filed his Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on December 11, 2008. On April 23, 2009, Warden Ed Sheldon ("Respondent") filed his Answer/Return of Writ. (Doc. No. 6.) Mitchell filed a Traverse on April 29, 2009. (Doc. No. 7.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Mitchell's Petition be denied.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Mitchell's conviction as follows:

> {¶ 4} On February 15, 2006, Toledo Police Detective Michael J. Awls, who is assigned to the Metro Drug Task Force, received a call from a "confidential source," that is, a confidential informant. The informant told Detective Awls that Mitchell was selling drugs at 1300 Woodland Avenue and was driving a maroon

pickup truck.

{¶ 5} Based on this information, and from numerous past experiences in arresting Mitchell for drug offenses, Detective Awls and other members of the Metro Drug Task Force set up a surveillance of appellant on Woodland Avenue, which is known as a high crime, drug trafficking area. In the meantime, a Detective Greenwood stayed at the police station and ran a computer check on appellant's driving status and any possible outstanding warrants. When he learned that appellant driver's license was suspended, with limited driving privileges, Greenwood informed the surveillance team of this fact.

{¶ 6} Sergeant Robert Marzec, the lead detective on the case, knew appellant because he had previously arrested him for drug trafficking. He positioned himself in an alley approximately two blocks south of appellant's truck, which was parked in the 1300 block of Woodland Avenue, where he was able to observe, through binoculars, any activity occurring around that truck. During a one-half hour period, the detective saw appellant meet with one or two people who would move out of Marzec's sight. Mitchell would then appear and walk back to his truck. He would open the driver's side door of the truck, reach into the truck, close the door, and then turn and disappear out of sight again. At one point, appellant met with another individual at the opening of an alley; Marzec saw a hand-to-hand exchange between the two in which appellant received paper (as opposed to coins) money that he held up to the sunlight and examined. At the hearing on appellant's motion to suppress, Marzec testified that he believed the hand-to-hand exchange was a drug transaction and that appellant examined the money to determine whether it was counterfeit.

{¶ 7} Shortly after the above exchange, appellant got into his truck and started to leave. Detective Marzec lost sight of the vehicle, but Detective Lori Renz pulled her unmarked vehicle in front of appellant's truck, and he was forced to stop. Mitchell climbed out of his truck and tried to flee, but he was seized by the task force captain. Appellant broke away from the captain and started to run. By that time, Detective Marzec arrived at the scene. He pursued appellant, tackled him, and placed him under arrest. According to Marzec, appellant was stopped because he had only limited/no driving privileges and for the purpose of conducting a drug investigation.

{¶ 8} When he stepped out of his vehicle, appellant dropped an individual baggy of crack cocaine outside the door of the pickup and started to run. He continued to drop baggies of crack cocaine until he was captured by Detective Marzec. A search of appellant's truck revealed more crack cocaine.

{¶ 9} Subsequently, Mitchell was indicted on (1) one count of violating R.C.2925.11(A) and (C)(4)(e), knowing possession of a controlled substance, cocaine or a substance containing cocaine, in an amount exceeding 25 grams but less than 100 grams, a felony of the first degree; (2) one count of violating R.C. 2925.03(A)(2) and (C)(4)(f), trafficking in cocaine, a felony of the first degree; and (3) one count of violating R.C. 2903.13(A) and (C)(3), assaulting a police officer during the performance of the officer's duties, a felony of the fourth degree. Appellant entered a plea of not guilty to each of the three counts of the indictment.

{¶ 10} Mitchell filed a motion to suppress all evidence discovered by law enforcement officials as the result of the warrantless search and seizure of his person and his motor vehicle. He asserted that said search and seizure was a per

-2-

> se violation of the Fourth Amendment to the United States Constitution. Specifically, appellant argued that the actions of the Metro Drug Task Force on February 15, 2006, constituted an arrest-not an investigatory stop; therefore, appellee, the state of Ohio, had to demonstrate probable cause to arrest him rather than have a reasonable, articulable suspicion of criminal activity to stop him. After holding a hearing, the trial court denied the motion to suppress. In doing so, the court below determined that, under a totality of the circumstances, the law enforcement officers in this case had probable cause to arrest appellant.
>
> {¶ 11} Appellant then withdrew his not guilty pleas and pled no contest to Count 2 in the indictment, trafficking in cocaine. The trial court found him guilty and sentenced him to a mandatory five years in prison, suspended his driver's license for a period of three years, and ordered his five year sentence to be served consecutively to a sentence imposed in another criminal case in which appellant was a defendant. Mitchell was also ordered to pay a mandatory fine of $10,000, plus fees and the costs of his confinement.

(Resp. Exh. 12.)

## II. Procedural History

### A. Conviction

On April 11, 2006, a Lucas County Grand Jury indicted Mitchell for one count of possession of crack cocaine, one count of trafficking in cocaine, and one count of assaulting a peace officer. (Doc. No. 6, Exh. 1.)

Mitchell, represented by counsel, filed a motion to suppress evidence obtained as a result of his warrantless arrest. (Doc. No. 6, Exh. 2.) After a hearing and briefing, the court denied the motion. (Doc. No. 6, Exh. 6.) Thereafter, Mitchell entered a "no contest" plea to one count of trafficking in cocaine. (Doc. No. 6, Exh. 7.) On March 2, 2007, he was sentenced to a term of five years imprisonment to be served consecutively to a sentence for a prior conviction. The remaining counts of the indictment were dismissed. (Doc. No. 6, Exh. 8.)

### B. Direct Appeal

Mitchell, represented by trial counsel, filed a timely notice of appeal to the Sixth District Court of Appeals, Lucas County, Ohio ("state appellate court"), raising a single assignment of error: "The trial court erred in denying appellant's motion to suppress." (Doc. No. 6, Exh. 10.) On September 28, 2007, the state appellate court affirmed the judgment of the trial court. (Doc. No. 6, Exh. 12.) Mitchell's motion for reconsideration was denied on November 6, 2007. (Doc. No. 6, Exh. 14.)

Mitchell, represented by new counsel, timely filed a notice of appeal to the Ohio Supreme Court raising the following sole proposition of law:  "The police lacked the quantum of information necessary to satisfy the stringent standard of probable cause to make an arrest as required by the Fourth Amendment to the Constitution of the United States and Art. I § 14 of the Ohio Constitution."  (Doc. No. 6, Exh. 15.)  On February 20, 2008, the Ohio Supreme Court declined jurisdiction and dismissed the case as not involving any substantial constitutional question.  (Doc. No. 6, Exh. 16.)

### C.  Federal Habeas Petition

On April 23, 2008, Mitchell filed the instant Petition asserting a single ground for relief:

> **Ground One**: The trial and appellate courts should have suppressed the evidence of an unlawful search and seizure of Mr. Mitchell, in violation of his rights under the Fourth Amendment to the United States Constitution.
>
> **Supporting Facts**: Mr. Mitchell was subjected to a warrantless arrest on the sole basis that he was believed to be driving while under suspension but with driving privileges.  As law enforcement has no probable cause to believe that he was operating his vehicle outside of the parameters of that known extension of driving privileges, the arrest was unlawful, and the fruits of that unlawful arrest should have been suppressed.
>
> The Ohio courts noted additional facts that were not relevant, including the fact the Mr. Mitchell was observed operating his vehicle in an area that was near a high-crime area, the fact that Mr. Mitchell was observed in some sort of hand-to-hand transaction that merely appeared possibly similar to a drug transaction, that Mr. Mitchell was driving a vehicle of a type described by a claimed source with no credentials offered, and that Mr. Mitchell was known to have a drug-related criminal history.  The officer ordering the arrest did not claim drug activities as part of the probable cause for the arrest.  The status as an "arrest" was stipulated.

(Doc. No. 1.)

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2009).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

### IV. Analysis

Respondent contends that Mitchell's Fourth Amendment claim is not cognizable in federal habeas review as it was given "full and fair" consideration by the Ohio courts. Mitchell responds that he did not receive a full and fair hearing as the decisions of the Ohio courts, at both

the trial and appellate levels, were contrary to established United States Supreme Court precedent and were based on an unreasonable determination of the facts.

A petitioner may not seek habeas relief on a claim of illegal arrest if he had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes. *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (*citing Stone v. Powell*, 428 U.S. 465 (1976)). Two distinct inquiries must be made in determining whether a petitioner may raise a claim of illegal arrest in a habeas action. *Id.* (*citing Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982) *cert. denied sub nom Shoemaker v. Riley*, 459 U.S. 948 (1982)). First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. *Id.* Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *Id.* (*citing Riley*, 674 F.2d at 526). In addition, although the rule in *Stone* pre-dates the passage of the AEDPA, it continues to govern treatment of Fourth Amendment claims in federal habeas proceedings. *Bressler v. Timmerman-Cooper*, No. 3:06-cv-2683, 2008 WL 313605, at *8 (N.D. Ohio, Feb. 4, 2008).

Here, the trial court held a suppression hearing and, thereafter, allowed the parties to submit briefs. The court concluded that the police officers had probable cause to arrest Mitchell. He appealed this issue to the state appellate court, which affirmed, stating:

> {14} Warrantless arrests are generally per se unreasonable, subject to specifically established exceptions. *Katz v. United States*, 389 U.S. at 357. A warrantless arrest is, however, reasonable under the Fourth Amendment to the United States Constitution when there is probable cause to believe that a criminal offense has been or is being committed. *United States v. Watson* (1976), 423 U.S. 411, 417-424. It is impossible to articulate a precise meaning of "probable cause." *Illinois v. Gates* (1983), 462 U.S. 213, 231. Thus, probable cause to arrest depends "upon whether, at the moment the arrest was made * * * the facts and circumstances within [the law enforcement officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio* (1964), 379 U.S. 89, 91 (citations omitted).
>
> * * *
>
> {34} In sum, we find, that under the totality of the circumstances, the members of the drug task force had probable cause to arrest appellant. The specific facts, taken as true, considered by this court in reaching this finding are: (1) a verified tip from an informant; (2) appellant was driving with a suspended

> license; (3) appellant was a known [sic] to engage in drug trafficking; (4) the area in which the arrest occurred was a high crime/drug trafficking area; and (5) Detective Marzec observed appellant engage in a hand-to-hand exchange and then hold up money to the sunlight. Accordingly, appellant's sole assignment of error is found not well-taken.

(Doc. 6, Exh. 12.)

As to the propriety of his arrest, Mitchell argues that the appellate court improperly took into consideration the testimony of Detective Marzec, who Mitchell alleges was not present at the time of the arrest. Marzec testified that the purpose of the traffic stop was two-fold -- Mitchell was driving illegally and he was selling drugs. Officer Awls, who made the stop and arrest, testified that the sole reason for the arrest was the driving issue. (Doc. No. 7, pp. 16-17.) Mitchell contends that the appellate court relied on Detective Marzec's testimony and unreasonably interpreted the facts regarding his driving privileges. Mitchell also argues that the appellate court cannot take into consideration that he had been involved in past drug activity or that the arrest was made in a location known to be a high drug crime area. (Doc. No. 7, p. 18.) Moreover, Mitchell argues that even though he was given a suppression hearing and an opportunity to brief his arguments, the trial court frustrated the Ohio mechanism when the court made bizarre and unsupported factual findings concerning his behavior as a landlord. He claims that he was engaging in business-like activity consistent with his status of a landlord during business hours.

Mitchell appears to do little more than disagree with factual determinations made by the state courts. He fails, however, to establish that he was in any way prevented from presenting the facts or the law that would support his belief that his arrest was unconstitutional. The record reflects that Mitchell was afforded a "full and fair" opportunity to litigate his claim in state court. He elected to call no witnesses, choosing instead to rely upon the cross-examinations of two police officers and the document granting him occupational driving privileges.

Mitchell's claim concerning the validity of his arrest is not cognizable on habeas review under the doctrine of *Stone v. Powell* as he had a "full and fair" suppression hearing. The record demonstrates that he was able to present his Fourth Amendment claim to the Ohio courts and that it was carefully considered and rejected at the trial level and on appeal. The state court

considered the totality of the circumstances and expressed its reasons for upholding the arrest. The state procedural mechanism allowing Mitchell the opportunity to present his Fourth Amendment claim did not fail.

## V. Conclusion

For the foregoing reasons, it is recommended that Mitchell's Petition be denied.

                                                              s/ Greg White
                                                  United States Magistrate Judge

Date:   May 27, 2009

## OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**